# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| **CASE NUMBER** | 00 C 474 | **DATE** | February 24, 2003 |
| **CASE TITLE** | Serge-Correa v. Pierson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the following reasons, Petitioner's habeas petition is **DENIED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 2 5 2003 date docketed | 44 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | JS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 2 5 2003

| | |
|---|---|
| CESAR E. SERGE-CORREA, | ) |
| Petitioner, | ) |
| | ) NO. 00 C 474 |
| v. | ) |
| | ) JUDGE WILLIAM J. HIBBLER |
| MARK PIERSON, Warden, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Cesar Serge-Correa ("Petitioner") was convicted by an Illinois jury of unlawful delivery of a controlled substance in violation of 720 ILCS 570/401(a)(1), and sentenced to twenty five years imprisonment. After Petitioner's challenges to his conviction and sentence were denied on direct appeal and in post-conviction proceedings, he filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting twelve possible grounds for relief. Upon careful consideration of the record and the submissions from the parties, the Court finds that Petitioner has procedurally defaulted on some claims, and failed to identify any error warranting habeas relief on the remaining claims. As such, the petition must be denied.

### RELEVANT FACTS

When considering a habeas petition, the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Because Petitioner does not challenge the Illinois Appellate Court's factual findings in his petition, the Court adopts the facts as set forth in *People v. Serge-Correa*, No. 2-95-1231 (Ill. App. Ct. Nov. 19, 1997) (unpublished Rule 23 Order).

Following an ongoing criminal investigation conducted by the Drug Enforcement Administration ("DEA"), Petitioner was indicted on charges of unlawful possession and unlawful delivery of a controlled substance based on an accountability theory, and unlawful criminal drug conspiracy. The state's key witnesses at the criminal trial were Mark LoMonaco ("LoMonaco"), who became an informant after the DEA caught him buying cocaine, and Amy Serna ("Serna"),

Petitioner's alleged girlfriend.

LoMonaco testified that on May 10, 1994, DEA Agents Nick Eliopoulos and Wayne Hunter directed him to contact Petitioner, seek to purchase two kilograms of cocaine and record their conversations. LoMonaco said he knew Petitioner and Serna from various "coke deals." Petitioner priced one kilogram of cocaine at $21,000 and told LoMonaco delivery would take place the next day. Several days passed, though, before Petitioner finally paged LoMonaco. On May 17, 1994, LoMonaco and Petitioner discussed the deal in two conversations which were recorded by LoMonaco and played for the jury at trial. In the first conversation, Petitioner acknowledged that he "was ready." In the second conversation, Petitioner stated that "[e]verything is okay," to which LoMonaco responded that he was waiting on Petitioner. Although LoMonaco and Petitioner never expressly referenced cocaine during those conversations, LoMonaco explained that he meant he was waiting for the delivery of the cocaine from Petitioner.

LoMonaco expected Petitioner to deliver the drugs that evening. However, Serna phoned LoMonaco and told him to wait outside his home. Serna subsequently arrived in a car driven by her sister, and handed LoMonaco a package. During their taped conversation, LoMonaco referenced Petitioner, saying "I know he was supposed to meet me here," and future purchases of cocaine from Petitioner, asking "he's got more, doesn't he?" Immediately following Serna's departure, LoMonaco drove down the street and handed the package and tape recording to Agent Eliopoulos.

Several days later, on May 20, 1994, Petitioner appeared at LoMonaco's business and said he needed money. Per the instructions of the DEA Agents, LoMonaco stalled for additional time, explaining that he was waiting for another guy to pay him before he could pay Petitioner. LoMonaco was unable to record this conversation.

On June 14, 1994, LoMonaco recorded his telephone conversation with Petitioner. During that conversation, LoMonaco identified Petitioner by name, Cesar, Petitioner quoted the total due as "twenty-one and a half," and in response to LoMonaco's inquiry if they could do that again,

Petitioner responded "Yeah. No sweat. No sweat bro. You got it." The jury heard three additional telephone conversations between Petitioner and LoMonaco that were recorded on June 15, 1995. In those conversations, LoMonaco again called Petitioner by name, Cesar, and explained that he did not have the money to pay. Petitioner responded that some crazy people wanted to come to Lake County, and LoMonaco would have to deal with them concerning his failure to pay. The final conversation regarding payment occurred on June 17, 1994, when LoMonaco paged Petitioner, but Serna returned the call and said Petitioner wanted to know if LoMonaco was going to do something.

Serna testified at Petitioner's criminal trial that she had known him for over 10 years and that he often traveled to Lake County, Illinois, even though he lived in Florida and had no family in the area. According to Serna, on May 17, 1994, Petitioner paged her while she was at her sister's house. When she returned the call, Petitioner told her someone would deliver a package to her, and asked if she could drop it off at LoMonaco's house, which was near her sister's home. Serna reluctantly agreed to do so. Within ten minutes, someone dropped off a package which she did not open. However, based on her earlier conversations with Petitioner, Serna knew the package contained cocaine. Serna's sister then drove the two of them to LoMonaco's house, where Serna gave LoMonaco the package and told him to call Petitioner regarding the price. Serna also testified that on June 16, 1994, Petitioner asked her to call LoMonaco and tell him Petitioner was in town with people from Miami who would do something about the drug debt. Serna said she did not know LoMonaco was working as a confidential informant.

At trial, Serna admitted that she had not been charged with the May 17, 1994, unlawful delivery of cocaine, and that she had never been arrested or charged in connection with a December 1994 incident where she was found in possession of 211 grams of cocaine.

The State also presented testimony from both DEA Agents. Agent Eliopoulos testified that he had seen Petitioner and Serna together at Serna's home on May 11, 1994, and that on May 17, 1994, he observed Serna sitting in a car in LoMonaco's driveway, talking to LoMonaco. Shortly

after Serna left, LoMonaco met Agent Eliopoulos and gave him the package of cocaine. Agent Hunter essentially testified to the same facts as Agent Eliopoulos.

The jury found Petitioner guilty on all three counts. However, at the hearing on the defense's post-trial motion, the trial judge vacated the conspiracy conviction, finding no true conspiracy existed since LoMonaco was acting as an agent of the State, and Petitioner could not be convicted of both the completed offense of delivery and the inchoate offense of conspiracy. At Petitioner's sentencing hearing, he presented in mitigation the fact that he had no prior criminal record, had obtained citizenship in the United States and supported his wife and dependent children. The trial judge nonetheless imposed a sentence of 25 years, 10 years above the minimum.

On direct appeal, Petitioner raised three issues: (1) the State had not proven him guilty beyond a reasonable doubt; (2) the trial court erred in admitting testimony by DEA agents with respect to an alleged conspiracy; and (3) the trial court abused its discretion in imposing an excessive sentence. The Illinois Appellate Court affirmed Petitioner's sentence and conviction on November 19, 1997. The appellate court concluded that the accomplice testimony was reliable in light of the corroborating statements by the DEA Agents and the tapes, and that the evidence as a whole supported the jury's finding of culpability. Furthermore, the appellate court found, the conspiracy testimony was relevant to establish Petitioner's identity, motive and accountability for the sale and delivery of cocaine. Finally, the appellate court noted several factors in aggravation that supported the imposition of a 25 year sentence. On December 2, 1998, the Illinois Supreme Court summarily denied Petitioner's petition for leave to appeal.

Petitioner then filed a *pro se* petition for post-conviction relief, asserting 12 issues for review, including his arguments on direct appeal and also denial of right to counsel on the day of trial, ineffective assistance of trial counsel, and *Batson* and *Brady* violations. His petition was dismissed as frivolous and without merit on September 11, 1998. Petitioner appealed the dismissal to the appellate court, and his counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990 (1987). On June 24, 1999, the appellate court granted the public defender's

-4-

motion to withdraw and affirmed the judgment of the trial court. *People v. Serge-Correa*, No. 2-98-1305 (Ill. App. Ct. June 24, 1999). Subsequently, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, again raising the same twelve grounds asserted in his post-conviction petition, which was summarily denied on October 6, 1999.

On January 21, 2000, Petitioner petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* petition, Petitioner raised the following issues: (1) failure to prove guilt beyond a reasonable doubt; (2) trial court erroneously admitted evidence of a conspiracy; (3) prosecutor improperly commented on Petitioner's failure to testify; (4) prosecutor used false testimony to obtain the indictment; (5) trial court imposed an excessive sentence; (6) *Brady* violation occurred when the prosecution withheld information regarding prior surveillance of Serna; (7) right to counsel denied; (8) ineffective assistance of trial counsel; (9) *Batson* violation because no minorities were present in the jury pool; (10) trial judge forced Petitioner to forgo his right to testify; (11) the jury was not apprised of deals the State offered LoMonaco and Serna in exchange for their testimony against Petitioner; and (12) denial of equal protection and due process rights when the Illinois Appellate Court refused to reverse Petitioner's criminal conviction.

## HABEAS CORPUS STANDARDS

Federal courts have the power to grant a writ of habeas corpus if a state prisoner is restrained in violation of the Constitution or laws and treaties of the United States. *See* 28 U.S.C. § 2254(a). However, such habeas relief shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the resultant effect is (1) a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 402, 120 S. Ct. 1495 (2000) (O'Connor, J.) the United States Supreme Court identified the ways a habeas petitioner could show that his case satisfied the

standards set forth in § 2254(d)(1). A state court decision would be deemed "contrary to" Supreme Court precedent, the Court explained, if the state court "arrives at a conclusion opposite to that reached by this Court on a question of law. . . or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 1519. Likewise, the Court noted, a state court decision would involve an "unreasonable application" if the state court "identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case . . . or extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should." *Id.* at 1520.

However, a federal court may not address the merits of a claim contained in a habeas petition unless the claim was fully and fairly presented to the state court for adjudication. *O"Sullivan v. Boerckel*, 526 U.S. 839, 119 S. Ct. 1728, 1731 (1999). In other words, petitioner must have exhausted all available state remedies, and raised all of his claims during the course of the state court proceedings, before seeking habeas relief in federal court. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).

## ANALYSIS

### *I. Procedural Default*

Respondent argues that claims 3 and 10 are procedurally defaulted because Petitioner failed to raise them either on direct appeal or in post-conviction proceedings. Petitioner responds that he properly preserved his claims that the Prosecutor improperly commented on his failure to testify (claim 3), and the trial judge forced him to forgo his right to testify (claim 10), by raising them in his pre-sentence motion, and in his petition for leave to appeal to the Illinois Supreme Court following the denial of his post-conviction petition. However, § 2254(c) requires that state prisoners give "state courts a *fair* opportunity to act on their claims." *Boerckel*, 119 S. Ct. at 1732 (emphasis in original). In *Castille v. Peoples*, 489 U.S. 350, 109 S. Ct. 1056, 1060 (1989), the Supreme Court soundly rejected the notion that submission of a new claim to a State's highest court on

discretionary review constitutes a fair presentation. Rather, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 119 S. Ct. at 1732. Petitioner concedes that he has not engaged in that process with respect to claims 3 and 10. As such, those claims are procedurally defaulted unless he can show cause and prejudice. *Rodriguez*, 63 F.3d at 555; *Green v. Peters*, 36 F.3d 602, 605 (7th Cir. 1994).

Petitioner maintains that his counsel's ineffectiveness in failing to assert his Fifth Amendment claims in the state court proceedings constitutes "cause" to excuse the procedural default. But Petitioner did not raise an ineffective assistance of counsel claim on these particular grounds in state court. The Supreme Court held in *Edwards v. Carpenter*, 529 U.S. 452, 120 S. Ct. 1587 (2000), that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Id.* at 1592. In *Murray v. Carrier*, 477 U.S. 488, 106 S. Ct. 2639 (1986), the Court explained that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 2646. Petitioner therefore must establish cause and prejudice for procedurally defaulting on the ineffective assistance claim before it can constitute "cause" to excuse the procedural default on the Fifth Amendment claims. *See Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002).

Petitioner has not met this burden. He offers no explanation for his failure to raise this ineffective assistance claim in his *pro se* post-conviction petition. Indeed, Petitioner presented two ineffective assistance arguments in his petition, but did not raise his Fifth Amendment claims until he petitioned the Illinois Supreme Court for leave to appeal, even though he was well aware prior to sentencing of these possible claims of constitutional error. Accordingly, the Court finds Petitioner is unable to show cause to excuse his procedural default on claims 3 and 10.[1]

---

[1] Petitioner does not suggest in his current petition that the "fundamental miscarriage of justice" exception applies to excuse his default. *See Carrier*, 106 S. Ct. at 2649 (defined as

## II. Noncognizable Claim

In claim 5, Petitioner argues that the twenty five year sentence imposed by the trial court is excessive in light of his lack of criminal history, and the fact that his accomplices, LoMonaco and Serna, were not charged with a crime. The Court notes that it "must defer to the prerogative of the Illinois legislature to determine the length of a sentence imposed for a state crime." *King v. Cahill-Masching*, 169 F. Supp. 2d 849, 855 (N.D. Ill. 2001), *citing Rummel v. Estelle*, 445 U.S. 263, 275, 100 S. Ct. 1133 (1980). Generally, if the sentence the trial court imposes is within the range established by Illinois law, its severity is not grounds for habeas relief in federal court. *See Henry v. Page*, 223 F.3d 483, 482 (7th Cir. 2000).

A person convicted of unlawful delivery of 900 grams or more of cocaine may be sentenced to serve fifteen to sixty years in prison.[2] 720 ILCS 570/401(a)(2)(D). The Illinois Appellate Court pointed out that, notwithstanding Petitioner's lack of a previous record and family obligations, the trial court identified several aggravating factors -- i.e., the large amounts of cocaine Petitioner sold to LoMonaco, and the fact that when agents searched him at O'Hare Airport, Petitioner, who claimed to earn $16,000 per year, had $10,000 on him and $105,000 in his suitcase, - - that justified a sentence above the minimum in order to deter future illegal drug dealing. Petitioner's sentence falls well within the proscribed statutory range, and the record contains no evidence to indicate an abuse of discretion sufficient to make his excessive sentence claim cognizable on habeas review. *King*, 169 F. Supp. 2d at 855.

## III. Merits

### A.   Insufficient Evidence

In claim 1, Petitioner claims a due process violation arising from the State's alleged failure

---

occurring where "a constitutional violation has probably resulted in the conviction of one who is actually innocent").

[2]The trial court did not sentence Petitioner on the conviction for unlawful possession of a controlled substance.

-8-

to prove him guilty beyond a reasonable doubt of the crime of delivery of cocaine. Petitioner contends that his conviction cannot stand in light of the unreliable and uncorroborated accomplice testimony from Serna and LoMonaco, and the lack of physical evidence connecting him to the charged crime. Because Petitioner essentially raises an insufficiency of the evidence claim, the Court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 316, 99 S. Ct. 2781, 2789 (1979) (emphasis in original); *Brumley v. DeTella*, 83 F.3d 856, 862 (7th Cir. 1996).

Petitioner was convicted of unlawful delivery of a controlled substance under an accountability theory. "Under this theory, a person is criminally responsible for the conduct of another if he aids, or attempts to aid, another person in the commission of a crime with the intent to facilitate the commission of that crime." *Brumley*, 83 F.3d at 862, *citing* 720 ILCS 5/5-2(c). Illinois law provides that "[a] defendant may be deemed accountable for acts performed by another if defendant shared the criminal intent of the principal, or if there was a common criminal plan or purpose." *People v. Taylor*, 164 Ill. 2d 131, 646 N.E.2d 567, 571 (Ill. 1995). Furthermore, "[w]ords of agreement are not necessary to establish a common purpose to commit a crime [as] [t]he common design can be inferred from the circumstances surrounding the perpetration of the unlawful conduct." *Id.*

The Illinois Appellate Court found the testimony presented at trial sufficient to establish Petitioner's culpability. At the instruction of the DEA Agents, LoMonaco contacted Petitioner about purchasing cocaine. LoMonaco says Petitioner agreed to sell him a kilogram of cocaine for $21,000. On May 17, 1994, the day Petitioner said he would deliver the drugs, Serna unexpectedly appeared at LoMonaco's home and gave him a package containing a kilogram of cocaine. Serna says Petitioner told her someone would drop off a package at her sister's house, and asked that she take it to LoMonaco. Serna testified that although she did not open the package, she knew it contained drugs because of her previous discussions with Petitioner. Furthermore, the jury heard

several tape-recorded conversations between LoMonaco and Petitioner after the delivery regarding payment for the cocaine.

Regardless of the credibility concerns that are present whenever accomplice testimony is offered, after reviewing the record the Court agrees with the Illinois Appellate Court that the testimony of Serna and LoMonaco was indeed reliable and trustworthy. The testimony of the DEA Agents and the tape-recorded conversations between Petitioner and LoMonaco independently corroborated the statements of LoMonaco and Serna regarding Petitioner's involvement with the cocaine sale and delivery. Although Petitioner makes much of the fact that he was not the one who actually delivered the cocaine to LoMonaco, "[e]vidence that defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design also supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." *Id.* Because a rational juror could reasonably infer from the facts presented that Petitioner was criminally accountable for the unlawful delivery of cocaine, the Court rejects Petitioner's request for habeas relief on the basis of insufficient evidence.

### B.  Improperly Admitted Evidence

In claim 2, Petitioner argues that the trial court erred in admitting at trial any testimony or evidence implicating him in a conspiracy with Serna and LoMonaco. Although the State charged Petitioner with unlawful drug conspiracy, and the jury convicted him on that count, Petitioner contends that because the trial court subsequently threw out the conviction, the conspiracy evidence should not have been allowed. On habeas review, the Court focuses its inquiry on "whether the admission of the evidence violated [Petitioner's] federal constitutional rights." *Estelle v. McGuire*, 502 U.S. 67, 112 S. Ct. 475, 480 (1991).

The Illinois Appellate Court found that the evidence supporting the conspiracy theory was also relevant to establish Petitioner's identity and accountability for the sale and delivery of the cocaine, and motive for selling drugs. The Court agrees. As the Court explained *supra*, to prove Petitioner's accountability for Serna's delivery of the drugs to LoMonaco, the State was required

-10-

to show a common criminal plan between Petitioner, Serna, and LoMonaco. The surveillance testimony by the DEA Agents established the relationship between the participants and Petitioner's link to the May 17, 1994 drug transaction carried out by Serna. Furthermore, while Petitioner characterizes testimony about his relationship with Serna as impermissible bad acts evidence which reflects negatively on his character, the Court finds that information relevant to explain why Serna so readily agreed to deliver drugs to LoMonaco for Petitioner, and later, at Petitioner's request, inquired of LoMonaco about forthcoming payment. Accordingly, the Court concludes that the evidence of a conspiracy presented at trial was probative on the question of Petitioner's accountability for the cocaine sale and delivery, and thus properly admitted. As such, Petitioner's due process rights were not violated by its admission.

Moreover, Petitioner erroneously contends the conspiracy conviction was vacated due to a lack of evidence. The trial court found that no true conspiracy could exist since LoMonaco was working for the State, and that the conviction for the incomplete conspiracy offense could not stand in light of the conviction for the completed offense of unlawful delivery. In addition, as the Illinois Appellate Court noted, because Petitioner never moved to dismiss the conspiracy charge or to limit testimony relating to such charge during the trial, he had waived any argument with respect to the evidence presented.

In sum, the Court finds that regardless of Petitioner's waiver, the conspiracy evidence was relevant. Petitioner has failed to show a violation of his federal constitutional rights, and therefore habeas relief on this claim is not warranted.

### C. Perjury

In claim 4, Petitioner argues that the prosecutor knowingly used false information to obtain an indictment from the grand jury. Petitioner points to DEA Agent Eliopoulos' testimony before the grand jury that he saw Petitioner hand the package of cocaine to LoMonaco on May 17, 1994, and his testimony at trial that Serna delivered the drugs. However, Respondent points out, as did appellate counsel in its *Finley* brief, that on the same page of the transcript Petitioner refers to, the

-11-

grand jury is told that Serna actually delivered the cocaine.

"Perjury is committed when a witness 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Washington v. Page*, 981 F. Supp. 1097, 1100 (N.D. Ill. 1997), *quoting United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993). Petitioner bears the burden of showing that the State knowingly used false testimony. *See Washington*, 981 F. Supp. at 1100.

DEA Agent Eliopoulos undoubtedly misspoke when he told the grand jury that Petitioner delivered the drugs. However, the transcript of the grand jury proceedings reveals that in the next sentences, the State cleared up the misunderstanding, explaining that it was Serna, not Petitioner, who completed the delivery to LoMonaco. In light of the State's prompt correction of the Agent's error, Petitioner has failed to prove any intentional wrongdoing on the part of the Prosecutor. His request for habeas relief on this claim is therefore denied.

### D. *Brady* Violation

In claim 6, Petitioner argues that a *Brady* violation occurred when DEA Agent Hunter testified at trial that he had not been involved in surveillance of Serna prior to May 17, 1994. Agent Hunter was asked: "Just from prior intelligence, not surveillance you had known about the identity of Amy Serna prior to May 17th?" and he responded: "Correct." According to a report of investigation Petitioner attached to his federal habeas petition, on April 13, 1994, DEA Agents Hunter and Eliopoulos observed Serna meeting with a confidential informant, and watched her business and home for a short period of time thereafter. Petitioner therefore contends that Agent Hunter and the prosecution concealed exculpatory evidence from the jury.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 1197 (1963), the Supreme Court held that the prosecution's suppression of evidence favorable to an accused violates due process when it is material to guilt or punishment. To establish a valid *Brady* claim, then, Petitioner must show "that the prosecution suppressed the evidence, that the evidence was favorable to the defense, and that the evidence was material to the case." *Mahaffey v. Schomig*, 294 F.3d 907, 917 (7th Cir. 2002). Even

if the investigative report contains favorable, material evidence that Petitioner would want to raise in his defense at trial, Petitioner has not suggested, let alone proven, that the Prosecutor failed to disclose this information. Rather, Petitioner claims the prosecution withheld this information from the *jury*. However, *Brady* protects a *defendant's* right to be made aware of exculpatory evidence possessed by the prosecutor. 83 S. Ct. at 1197. As such, Petitioner's reliance on *Brady* here is clearly misplaced.

Likewise, in claim 11, Petitioner argues that a *Brady* violation occurred when both LoMonaco and Serna testified at trial that neither had received any promises of leniency from the State. According to Petitioner, the existence of a deal is information the jury would need to know in order to properly assess the credibility of the witnesses. But again, as the Court has already noted, Petitioner misunderstands the reach of *Brady*. For *Brady* purposes, the relevant inquiry does not concern information disclosed to the jury, but to a criminal defendant. More significantly, Petitioner has not shown that the prosecution actually promised immunity to LoMonaco and Serna in exchange for their testimony. Petitioner assumes that because neither of his accomplices was prosecuted for their drug offenses they must have had a deal in place. However, he fails to back up that contention with any proof of an agreement. Consequently, Petitioner has not even established the existence of favorable, material evidence that the Prosecutor was required to disclose.

These claims, therefore, do not warrant habeas relief.

### E. Denial of Right to Counsel

In claim 7, Petitioner argues that his right to counsel was violated when the trial court refused to grant a continuance in order to allow Petitioner to substitute a private paid attorney for the public defender. In support of his claim, Petitioner submits the transcript from the proceedings before the trial court, and a letter from the attorney he claims to have hired. According to the transcript dated July 18, 1995, Petitioner appeared before the trial court and indicated that he wanted to obtain another lawyer. The trial court noted that the case had been on the call for a long

-13-

time, and that Petitioner had waited until the day of trial to assert his desire for new representation. When questioned further by the trial court, Petitioner stated that he had tried to get this lawyer to represent him, and that his wife was supposed to bring the money to court to pay him, but that he did not know if the lawyer would appear in court that day. The trial court denied Petitioner's request and the case proceeded. Petitioner relies on a July 14, 1995 letter from proposed counsel, Mr. Echeles, to further support his argument that he was wrongfully denied the right to proceed with new counsel of his choice. However, in the letter, Mr. Echeles states only that as he had previously indicated to Petitioner, with a downpayment on the fee, he would move to continue the case for a short time.

The Sixth Amendment entitles a criminal defendant to the assistance of counsel. However, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 157, 108 S. Ct. 1692, 1697 (1988). Nevertheless, a criminal defendant's Sixth Amendment right may be infringed "by the arbitrary denial of a continuance when the effect is to deny the defendant the lawyer of his choice." *United States v. Santos*, 201 F.3d 953, 958 (7th Cir. 2000). The Supreme Court has recognized, though, that because trial courts must be granted broad discretion on matters of continuances, "only an unreasonable and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violate[s] the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 10, 103 S. Ct. 1610, 1616 (1983), *quoting Ungar v. Sarafite*, 376 U.S. 575, 84 S. Ct. 841, 849 (1964). Indeed, "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is assembling witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Morris*, 103 S. Ct. at 1616.

Petitioner waited until the day of trial to request a continuance so that he could be represented by counsel who was not present in court. In fact, it was not clear that Petitioner had

actually retained Mr. Echeles, since the letter required payment in order for counsel to proceed. Whether Petitioner's wife actually appeared in court with the money to pay Mr. Echeles is not clear from the record. Regardless, at the time of Petitioner's request, the case had been pending for approximately 6 months and the witnesses, lawyers and jurors were ready to proceed. Petitioner had not yet paid for the services of Mr. Echeles, and Mr. Echeles did not appear in court on that morning to seek a continuance of the trial date. In light of the uncertainty surrounding Petitioner's claim that he had obtained new counsel, this Court cannot say the trial court abused its discretion in denying a continuance. Nothing in this record suggests that the trial court acted arbitrarily. Therefore, Petitioner is not entitled to habeas relief on this claim.

### F. Ineffective Assistance of Counsel

In claim 8, Petitioner argues that trial counsel rendered ineffective assistance because counsel (1) was forced to go to trial and given the case at the last minute; (2) allowed the prosecution to play illegal and unauthorized tapes at trial; (3) allowed the prosecution to present witnesses who lied on the stand; and (4) failed to rebut the PSI which depicted Petitioner as a bad person with a criminal history. Petitioner maintains trial counsel's performance was so defective that he was deprived of a fair trial and is thus entitled to have his conviction reversed. To succeed on this claim, Petitioner must establish that: (1) his counsel's performance was objectively unreasonable; and (2) but for his counsel's deficient representation, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 686, 104 S. Ct. 2052, 2064 (1984). "Both components are necessary; the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

With respect to issue 1, Petitioner has presented no evidence to support his contention that the public defender had insufficient time to prepare for trial and yet was forced to proceed. As the Court noted above, the case had been pending for almost 6 months by the time the trial began, and the only request for a continuance was lodged by Petitioner, not his trial counsel. Concerning issue 3, the Court cannot imagine, and Petitioner has not attempted to explain, what control his trial counsel could have possibly exercised over the State's witnesses. Whether or not those witnesses

testified for the prosecution was a decision to be made by the State, not Petitioner's counsel. As for issue 4, the record directly contradicts Petitioner's contention that trial counsel failed to read or challenge the PSI. In Petitioner's brief on direct appeal, appellate counsel states that during the sentencing hearing, trial counsel mentioned Petitioner's good behavior in jail, work history, and support of his dependents, noted the disparity in the outcome of the case since his accomplices were never charged with the unlawful delivery he was convicted of, and pointed out that Petitioner had obtained citizenship in this country and the amount delivered was close to the minimum weight classifying the crime. Indeed, before imposing sentence, the trial judge found several mitigating factors in Petitioner's favor, including the lack of serious physical harm caused to another person by his conduct, that LoMonaco and Serna had induced and facilitated the delivery, and the lack of any history of delinquency or criminality. Trial counsel, therefore, provided adequate representation to Petitioner at sentencing. Consequently, the Court finds that on issues 1, 3 and 4, Petitioner has failed to establish the first prong of *Strickland*, objectively unreasonable performance, and thus his ineffective assistance of counsel claim fails. 104 S. Ct. at 2064 (deficient performance requires a showing "that counsel made errors so serious" that he failed to properly function).

Issue 2 concerns the tape-recorded conversations by LoMonaco that were played at trial and used to implicate Petitioner in the sale and delivery of the cocaine. Petitioner contends trial counsel failed to challenge the admissibility of the tapes, but does not identify particular grounds that should have been raised. Under Illinois law, it was perfectly legal for LoMonaco to record his conversations with Petitioner and Serna. *See People v. Herrington*, 163 Ill.2d 507, 645 N.E.2d 957, 959 (Ill. 1994) (stating that the Illinois eavesdropping statute "allows the recording of a conversation by a party to that conversation"). Thus, it would have been futile for trial counsel to file, as Petitioner suggests, a motion to obtain copies of search warrants or authorization for recording, and a motion to suppress. Indeed, the DEA Agents were not required to obtain authorization before giving *LoMonaco* a tape recorder and telling him to record his conversations

with Petitioner and Serna. *See* 720 ILCS 5/14-2 (generally prohibiting individuals, including law enforcement officers, from using an eavesdropping device to hear or record any part of a conversation unless he does so with the consent of all parties to the conversation). The conversations recorded by LoMonaco were the only ones presented at trial, and the Illinois Appellate Court on direct appeal found them admissible.

Petitioner nonetheless maintains that trial counsel should have hired an expert witness to challenge LoMonaco's testimony that it was Petitioner's voice on the tapes. Certainly there is no guarantee that had a voice expert analyzed the tapes he would have conclusively established that the other voice on the tapes was not Petitioner's. Indeed, LoMonaco identified Petitioner by name during two of their recorded conversations. But even assuming deficient performance by trial counsel on this point, Petitioner cannot satisfy the prejudice prong of the *Strickland* test. While the tapes helped the prosecution tie Petitioner to the drug transaction, there was still enough evidence to support his conviction without them. LoMonaco testified that he solicited and Petitioner agreed to sell him a kilogram of cocaine, while Serna testified that Petitioner solicited her to deliver the drugs to LoMonaco. The tape-recorded conversations between LoMonaco and Serna established that Petitioner was their connection in the cocaine deal. When Serna completed the delivery, LoMonaco mentioned that "he" was supposed to meet me and asked if "he's" got more. Serna told LoMonaco to talk to "him" about the price. Furthermore, LoMonaco paged Petitioner, but it was Serna who responded, stating that "he" wanted to know if LoMonaco had the money. In light of the fact that the State proceeded on an accountability theory, and the evidence Petitioner does not contest established that he played an integral role in the plan to sell and deliver cocaine, the Court cannot say that but for trial counsel's alleged error, Petitioner would not have been convicted.

Therefore, Petitioner's request for habeas relief due to ineffective assistance of counsel is denied.

### G. *Batson* violation

In claim 9, Petitioner argues that his due process rights were denied because he was tried

by an all-white jury. Contrary to Petitioner's beliefs, *Batson v. Kentucky*, 476 U.S. 83, 106 S. Ct. 1712 (1986), does not hold that a minority defendant's trial is presumptively unfair unless minorities are present in the jury pool. 106 S. Ct. at 1717 ("a defendant has no right to a petit jury composed in whole or in part of persons of his own race") (citation and internal quotations omitted). Rather, *Batson* stands for the proposition that the State may not purposefully exclude minorities from the jury venire on account of race. *Id.* Petitioner does not contend here that the State engaged in purposeful racial discrimination when selecting the jury pool. Absent some evidence of a constitutional violation, Petitioner is not entitled to habeas relief on this claim.

### H. Denial of Due Process and Equal Protection

Finally, in claim 12, Petitioner argues that the Illinois Appellate Court denied his due process and equal protection rights when it refused to reverse his conviction. However, because the Court finds Petitioner has not established that the state court decisions were either "contrary to" or constituted "an unreasonable application of" existing Supreme Court precedent, federal habeas relief is not warranted.

### CONCLUSION

For all the foregoing reasons, the Court denies the petition for a writ of habeas corpus.

**IT IS SO ORDERED.**

_____
AMY J. ST. EVE, DISTRICT JUDGE

DATED: February 24, 2003

-18-